# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

REE-CO URANIUM L.P. and OLIVER
REESE,

    Plaintiffs,

v.                                                                     No. 9-CV-881 WJ/ACT

STATE OF NEW MEXICO MINING
COMMISSION, STATE OF NEW MEXICO
ENERGY MINERALS AND NATURAL
RESOURCES DEPARTMENT, BILL
BRANCARD, HOLLAND SHEPHERD and
JAMES HOLLEN,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

THIS MATTER comes before the Court on Plaintiffs' Motion for a Preliminary Injunction (Doc. 16).  Plaintiffs want this Court to enter an injunction prohibiting New Mexico from enforcing its mining regulations against Plaintiffs until this Court determines whether or not New Mexico's mining regulations are preempted by federal law.  Because Plaintiffs have not shown that they have a likelihood of success on the merits nor that they will suffer irreparable harm in the absence of injunctive relief, the Court DENIES Plaintiffs' motion.[1]

## BACKGROUND

---

[1] In a separate document, Plaintiffs requested a hearing on their Motion for a Preliminary Injunction (Doc. 19).  Given the ensuing discussion, the Court sees no need for a hearing and denies the Plaintiffs' request.

1

In early 2008, Plaintiff Ree-Co Uranium L.P. ("Ree-Co") staked 190 mining claims for federal reserved materials on private and federal lands in New Mexico.  After filing a Notice of Location for each of these claims with the Bureau of Land Management, Ree-Co then began exploratory drilling in order to perfect its right to the minerals under federal law.  Federal mining law requires that a claimant actually discover a valuable mineral deposit before it can claim title to the deposit.  *See Union Oil Company California v. Smith*, 249 U.S. 337 (1919).

In August 2008, New Mexico's Energy, Minerals and Natural Resources Department ("Department") issued Ree-Co a Notice of Unpermitted Exploration Drilling Activity stating that Ree-Co was required to obtain a permit from New Mexico before conducting mining exploration activities in the state.  In February 2009, as a follow-up, the Department issued Ree-Co a Notice of Violation for its unlawful drilling.  The Notice of Violation advised Ree-Co that "exploration drilling in New Mexico requires an approved permit from [the Department] pursuant to Section 19.10.4.401A of the New Mexico Mining Act Rules."

In May 2009, Ree-Co submitted to the Department an application for a General Permit to conduct discovery activities on the located mining claims.  In August 2009, the Department issued a General Permit to Ree-Co.  That General Permit, however, specified certain conditions and limitations on Ree-Co's drilling activity.  It allowed Ree-Co to conduct shallow drilling activity (i.e. holes no greater than 2-inches in diameter and no deeper than 50 feet), but declined to authorize the twenty 1200-foot-deep holes that Ree-Co proposed to drill.  Such deep drilling, the Permit stated, "will require either a minimal impact exploration permit or a regular exploration permit, pursuant to 19.10.3.302 NMAC and 19.10.4.402 NMAC, respectively."

Rather than applying for an exploration permit, Ree-Co filed this suit for declaratory and injunctive relief in federal court, arguing that New Mexico's permitting regulations are

preempted by federal mining law.[2]  Essentially, Plaintiffs argue that Defendants' decision to require Plaintiffs to obtain a second permit before drilling 1200-foot holes hinders Plaintiffs' ability to develop its mining claims under federal law.  Plaintiffs then filed the instant Motion for a Preliminary Injunction, asking this Court to enter a preliminary injunction which would: (1) prevent the Defendants from enforcing the New Mexico Mining Act or its associated regulations against the Plaintiffs; (2) prevent the Defendants from issuing any violation notices or taking similar administrative action against the Plaintiffs; (3) prevent the Defendants from requiring the Plaintiffs to apply for an exploration permit.

## LEGAL STANDARD

Preliminary injunctions are extraordinary remedies which a party cannot obtain without showing a clear and unequivocal right to relief.  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256 (10th Cir. 2004) (internal quotation omitted).  To obtain a preliminary injunction, the moving party must establish: (1) a likelihood of success on the merits[3]; (2) a likelihood that the movant will suffer irreparable injury without the preliminary relief; (3) that the threatened injury to the movant outweighs the injury to the enjoined party; and

---

[2] Plaintiffs also filed a petition for review to the New Mexico Mining Commission ("Commission").  In its petition, Ree-Co made two arguments.  First, it argued that the conditions attached to the General Permit violated various New Mexico regulations.  Alternatively, Ree-Co argued that federal mining law preempts the New Mexico regulations.  On March 15, 2010, after five days of hearings, the Commission issued its final decision rejecting both of Ree-Co's arguments.  *See* Notice of Filing of Mining Commission Decision (Doc. 43).

[3] In certain cases, this first requirement is relaxed and a movant need only show that "questions going to the merits [are] so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation."  *Walmer v. U.S. Dep't of Defense*, 52 F.3d 851, 854 (10th Cir. 1995).  The relaxed standard does not apply when the movant is seeking a disfavored injunction which would alter the status quo—as the Plaintiffs are here.  *See Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 n.3 (10th Cir. 2009).

(4) that the preliminary injunction is not adverse to the public interest.  *See* FED. R. CIV. PRO. 65; *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir.2001); *Walmer v. U.S. Dep't of Def.*, 52 F.3d 851, 854 (10th Cir.1995) (citation omitted).  If the movant fails to meet its burden on even one of the requirements for a preliminary injunction, the court should deny the request for injunctive relief.  Because the primary goal of a preliminary injunction is to preserve the status quo of the parties until a trial on the merits takes place, any injunction which alters the status quo is disfavored.  *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 & n.3 (10th Cir. 2009).  A party seeking a disfavored injunction must satisfy a heightened burden with respect to all four factors.  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).

## ANALYSIS

### I.  Likelihood of Success on the Merits

First, Plaintiffs have not shown that they are likely to succeed on the merits of their preemption claim.  The crux of Plaintiffs claim is that federal mining law—specifically, the Mining Law of 1872—preempts New Mexico's own mining statutes and regulations.  Instead of explaining *why* federal mining law preempts New Mexico's mining laws, Plaintiffs merely assert in a conclusory fashion that it does so.  *See, e.g.*, Plaintiff's Reply, at 6.  In fact, the Plaintiffs devote only *one sentence* of their Motion to explaining why they are likely to succeed on the merits of their preemption claim.  *See* Plaintiff's Motion at 2-3.  Plaintiffs' Reply brief is similarly unhelpful.  Plaintiffs spend most of their Reply brief complaining that the Defendants' actions were arbitrary and capricious based on their allegations that Defendants have issued permits to other prospectors who proposed similarly disruptive drilling, that Defendants made hostile public comments about the Plaintiffs and that Defendants intended to "sit" on Plaintiffs'

application. None of these allegations, however, are relevant to Plaintiffs' only remaining claim of federal preemption.

Federal preemption of state laws or regulations can occur in three different ways: express preemption, field preemption and conflict preemption. *See Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010). As best the Court can tell, the Plaintiffs here are making claims of field preemption and conflict preemption. *See* Plaintiff's Motion, at 3 (". . . Congress extensively regulates conduct in the entire field of establishing ownership of federal reserved minerals, and the New Mexico Mining Act and implementing rules and regulations interfere with and defeat the federal purpose of discovery as a requirement for establishing a valid unpatented claim to reserved federal minerals . . ."). However, Plaintiffs have not shown that they are likely to succeed under either theory of preemption.

Field Preemption. Field preemption occurs when "the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for States to supplement it." *Blue Circle Cement v. Bd. of County Comm'rs of the County of Rogers*, 27 F.3d 1499, 1504 (10th Cir. 1994) (quotations omitted). Rather than displacing state law, however, the federal Mining Act of 1872 expressly contemplates supplemental state law. The Mining Act of 1872 sets forth the federal policy that "all valuable mineral deposits in lands belonging to the United States . . . shall be free and open to exploration and purchase." 30 U.S.C. § 22. It goes on to state, however, that federal lands will be open to exploration only "under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States." *Id.* In another provision, Congress conditions a prospector's rights to located claims upon compliance with state and local laws and regulations. *See* 30 U.S.C. § 26 (giving locators

certain exclusive rights "so long as they comply with the laws of the United States, and with State, territorial, and local regulations not in conflict with the laws of the United States."). These provisions clearly demonstrate that Congress anticipated a role for complementary state laws and did not intend to completely occupy the field of mining law.

Even if the text of the Act itself left room for doubt, the Supreme Court has held in multiple cases that states are free to pass supplemental mining regulations without running afoul of federal law. In *Butte City Water Co. v. Baker*, 196 U.S. 119 (1905), the Supreme Court upheld a Montana law setting forth additional location requirements for mining claims. In so doing, it recognized that the Mining Act of 1872 left much regulation to the individual states. *Id.* at 126. More recently, in *California Coastal Commission v. Granite Rock Company*, 480 U.S. 572 (1987), the Supreme Court upheld California's law requiring prospective miners to obtain a permit before mining on federal land. "Rather than evidencing an intent to pre-empt such state regulation, [federal laws] appear to assume compliance with state laws"—particularly in the area of environmental regulation. *Id.* at 593. The Courts of Appeals and State Supreme Courts have all reached similar conclusions. *See, e.g.*, *Wilderness Society v. Dombeck*, 168 F.3d 367, 370 (9th Cir. 1999) ("State mining law controls procedures for locating mining claims to the extent that it is not inconsistent with federal law."); *Brubaker v. El Paso County*, 652 P.2d 1050, 1056 (Colo. 1982) ("[T]he Mining Law of 1872 also leaves room for operation of non-conflicting state requirements in this area."). Because Plaintiffs have not presented any argument to the contrary, the Court concludes that Plaintiffs are not likely to succeed on their claim of field preemption.

Conflict Preemption. Conflict preemption occurs whenever compliance with both federal and state laws is a "physical impossibility", or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the federal law. *See*

*Edmondson*, 594 F.3d at 766 (quotations omitted). Certainly, it is not physically impossible for Ree-Co to comply with both federal mining law and New Mexico's permitting requirement here. Rather, Plaintiffs argue that New Mexico's laws and regulations "interfere with and defeat the purpose" of federal mining law. The purpose of the Mining Act of 1872 is to "encourage exploration for and development of mineral resources on public lands." *See Brubaker*, 652 P.2d at 1056; *see also United States v. Coleman*, 390 U.S. 599, 602 (1968) (noting that purpose of Mining Act is to reward ane encourage the discovery of economically valuable minerals on public lands). Several courts have struck down state and local mining regulations when those regulations actually *prohibit* the exercise or enjoyment of federal mining rights. No court, however, has questioned the validity of local regulations which merely regulate and do not prohibit mining activity.

A brief look at these two classes of cases is illustrative. In *Brubaker v. Board of County Commissioners*, the en banc Colorado Supreme Court ruled that a county could not deny the appellants a drilling permit for policy reasons when the drilling activity had already been subject to federal review and approved by federal officials. *Id.* The Court was careful to note, however, that it was "not presented with a challenge to the facial validity of the [local] . . . ordinances or with the question of whether the appellants could be required to apply for a permit under those ordinances." *Id.* at 1059. In fact, the Court stated, "[s]tate and local laws that merely impose reasonable conditions upon the use of federal lands may be enforceable, particularly where they are directed to environmental protection concerns." *Id.* In *Brubaker*, however, the Colorado Supreme Court was faced with a situation where the county "seeks not to regulate but to prohibit the appellants' core drilling activities." *Id.* Such a prohibition, the Court ruled, frustrated the purpose of the federal mining laws. *Id.* at 1060 ("[T]he Board has applied its zoning regulations

7

so as to prohibit a use of federal lands authorized by federal legislation.  That action conflicts with the objectives and purposes of Congress reflected in the federal mining laws . . . .").  Similarly, in *South Dakota Mining Association v. Lawrence County*, the Eighth Circuit held that the Mining Act of 1872 preempted a local ordinance which prohibited the issuance of any new permits for surface metal mining on federal land.  155 F.3d 1005 (8th Cir. 1998).  The Eighth Circuit emphasized that the local ordinance constituted a "per se ban" on all surface mining rather than merely setting conditions under which the mining must occur.  *Id.* at 1011.  Because the ordinance operated as a de facto ban on mining, it conflicted with the purposes of the Mining Act of 1872 and therefore was preempted.  *Id.*

   In cases where the state is truly regulating—rather than prohibiting—mining activity, courts have held that federal laws do not prohibit the state regulations.  For example, in *Granite Rock*, the Supreme Court held that federal law did not preempt California's requirement that one obtain a permit before operating a mine in California.  480 U.S. at 593.  In that case, California asserted that it did not intend to ban mining, but only to regulate it.  *Id.* at 587.  Quoting from the parties' briefs, the Court stated: "Despite Granite Rock's characterization of the Coastal Act regulation as a 'veto' or ban of mining, Granite Rock has not applied for any coastal permit, and the State . . . has not indicated that it would in fact ban such activity . . . . [T]he question presented is merely whether the state can *regulate* . . . a given mining use so that it is carried out in a more environmentally sensitive and resource-protective fashion."  *Id.* at 587.  Having framed the question this way, the Supreme Court went on to find that federal law did not preempt California's permit requirement.  Likewise, in *State ex rel. Andrus v. Click*, the Supreme Court of Idaho upheld Idaho's mining permit requirement.  554 P.2d 969 (Idaho 1976).  It noted Congress' hope "that [mining] be carried out wherever possible so as to minimize its adverse

impact on environmental quality." *Id.* at 977.  While Idaho's permitting requirement would be unenforceable to the extent that it made it *impossible* to mine, the mere imposition of a permit requirement does not stand as an obstacle to the Mining Act of 1872.  *Id.* at 975.

New Mexico's requirement that Ree-Co obtain a minimal impact permit or an exploration permit before conducting deep drilling operations clearly falls into the second category of laws that *regulate* but do not *prohibit* mining activity.  Nothing in the New Mexico Mining Act or its attendant regulations bans the type of drilling that Plaintiffs want to conduct.  Neither have Defendants given this Court any reason to believe that they will arbitrarily ban such drilling.  Rather, Defendants merely want Plaintiffs to obtain a minimal impact or exploration permit before drilling the 1200-foot holes.  Unlike general permits, minimal impact and exploration permits provide standards for the proper plugging and abandonment of deep holes and require applicants to provide financial assurance to New Mexico.  These additional regulatory requirements may create more work for Plaintiffs, but they certainly do not make it impossible for Plaintiffs to conduct mining activities.  Because Plaintiffs have not shown that New Mexico's statutes and regulations prohibit them from conducting mining activities, I hold that Plaintiffs are not likely to succeed on the merits of their preemption claim.  Accordingly, Plaintiffs have not satisfied the first prong of the standard for a preliminary injunction.

**II.     Irreparable Injury**

Because Plaintiffs have not shown that they are likely to succeed on the merits of their claim, I need not discuss the rest of Plaintiffs arguments in favor of a preliminary injunction.  For the sake of completeness, however, I will briefly address Plaintiffs' argument that they will suffer irreparable injury if a preliminary injunction does not issue.  Plaintiffs argue that they will suffer immediate and irreparable injury in the absence of a preliminary injunction because, while

this litigation is pending: (1) a competitor may apply for and obtain a mining permit for the same mining claims thereby destroying Plaintiffs' expectations in those claims; and (2) United States Senate Bill 796, which forecloses the patenting of mining claims. Plaintiffs' Reply, at 8.

Neither of Plaintiffs' arguments are convincing. Purely speculative harm is not sufficient to show irreparable injury; rather, Plaintiffs must demonstrate a *significant* risk that they will suffer harm. *See Roda Drilling Co.*, 552 F.3d at 1210. Here, Plaintiffs do not assert that any other individual has actually applied for a permit which would threaten their mining claims. Moreover, Defendants affirmatively stated that "[t]here has been no other applicant for such a permit in the area Plaintiffs wish to explore, nor has the State received any indication that any other party is considering such an application." Defendants' Response, at 15. Without any showing that Plaintiffs claims are actually in danger from a competitor, Plaintiff cannot show a significant risk of harm. Plaintiffs claim that they will suffer irreparable injury if Senate Bill 796 becomes law in the meantime is similarly speculative. As Defendants point out, Senate Bill 796 has only been subject to a preliminary committee hearing in the Senate thus far. Before it becomes law, it must get voted through the Senate Committee as well as the full Senate, work its way through the committee process in the House of Representatives, get voted through the House, make it through the reconciliation process and get signed into law by the President. It is highly unlikely that the bill will become law before this Court holds a trial on the merits in this case. Finally, as Defendants point out, while the bill would foreclose the patenting of mining claims, Plaintiffs could still perfect and mine their claims under that legislation. Therefore, Plaintiffs have not shown irreparable injury.

## CONCLUSION

Because Plaintiffs have not shown either a likelihood of success on the merits or that they

will suffer irreparable injury if a preliminary injunction does not issue, I need not address Plaintiffs' remaining arguments on the balance of equities or the public interest. Accordingly, Plaintiffs' Motion for a Preliminary Inunction (Doc. 16) is DENIED. Furthermore, Plaintiffs' Motion to Strike the Declaration of Bill Brancard (Doc. 26) is DENIED AS MOOT.[4]

    **SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

---

[4] Defendants submitted the declaration of Bill Brancard, the Director of the Mining and Minerals Division in the New Mexico Energy Minerals and Natural Resources Department, in support of their Response to Plaintiffs' Motion for Preliminary Injunction. Plaintiffs thereafter filed a Motion to Strike Mr. Brancard's declaration (Doc. 26). Because I did not rely on Mr. Brancard's declaration in my opinion, I need not address Plaintiffs' Motion to Strike.