## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————

REE-CO URANIUM L.P. and OLIVER
REESE,

      Plaintiffs,

v.                                                        No. 9-CV-881 WJ/ACT

STATE OF NEW MEXICO MINING
COMMISSION, STATE OF NEW MEXICO
ENERGY MINERALS AND NATURAL
RESOURCES DEPARTMENT, BILL
BRANCARD, HOLLAND SHEPHERD and
JAMES HOLLEN,

      Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS BASED ON *YOUNGER* PRINCIPLE, and
### DENYING MOTION TO DISMISS BASED ON RULE 12(B)(6) AS MOOT

      THIS MATTER comes before the Court following a hearing upon a (1) Motion to

Dismiss Based on the Principles of Younger Abstention, filed by Defendants Brancard, Shepherd

and Hollen on September 5, 2010 (**Doc. 51**) and (2) a Motion to Dismiss, filed by Defendants

Brancard, Holland, Shephard and Hollen ("Defendants") on September 5, 2010 (**Doc. 53**).

Having considered the parties' briefs and the applicable law, I find that Defendants' motion to

dismiss based on *Younger* is well-taken and will be granted.  The granting of that motion renders

moot Defendants' motion to dismiss based on Rule 12(b)(6), which will be denied as moot.

### Background

      Plaintiff Ree-Co Uranium LP ("Ree-Co") is a Delaware limited partnership that has

staked and noticed mining claims for federal reserved minerals on both private and federal lands

located in McKinley County, State of New Mexico.  Plaintiff Oliver Reese is the President of

Ree-Co Minerals GP, L.L.C., General Partner of Ree-Co.  Plaintiffs assert that their efforts to

perfect Ree-Co's mining rights are stymied because the rules and regulations adopted by the

New Mexico Mining Commission and the Mining and Minerals Division of New Mexico's

Energy, Minerals and Natural Resources Department have made it impossible for them to

comply with both state and federal requirements.  Plaintiffs filed this suit for declaratory and

injunctive relief in federal court, arguing that New Mexico's mining statutes and regulations are

preempted by federal mining law – specifically, the 1872 Mining Law, 30 U.S.C. §§ 21-54.  In

Counts I and III of the complaint, Plaintiffs seek declaratory and injunctive relief related to the

preemption issue, ultimately seeking an order which prevents the State from enforcing against

Plaintiffs the State's mining statutes and administrative regulations.[1]  Count II alleges a violation

of civil rights, centering on the Fifth and Fourteenth Amendment's right to procedural and

substantive due process, and equal protection under the law.

A brief overview of the background to this litigation is helpful in understanding

Plaintiffs' claims.  Plaintiff Ree-Co Uranium L.P. ("Ree-Co") staked 190 mining claims for

federal reserved materials on private and federal lands in McKinley County, New Mexico.  In

March 2008, Ree-Co filed a Notice of Location for each of its 190 claims with the Bureau of

Land Management ("BLM").  *See Cole v. Ralph*, 252 U.S. 286 (1920) ("Location is the act or

series of acts whereby the boundaries of the claim are marked.").  Ree-Co then began

exploratory drilling on its noticed mining claims in order to perfect its right to the minerals under

federal law.  Federal mining law requires that a claimant actually discover a valuable mineral

---

[1]  *See* NMSA 1978 §§ 69-36-1 to -20 (the New Mexico Mining Act) and NMAC Title 19
for the New Mexico Administrative Regulations.

deposit before it can claim title to the deposit.  *See Union Oil Co. Cal. v. Smith*, 249 U.S. 337 (1919) ("It is clear that in order to create valid rights . . . as against the United States a discovery of mineral is essential.").

In August 2008, New Mexico's Energy, Minerals and Natural Resources Department ("Department") issued Ree-Co a Notice of Unpermitted Exploration Drilling Activity stating that Ree-Co was required to obtain a permit from New Mexico before conducting mining exploration activities in the state.  In February 2009, as a follow-up, the Department issued Ree-Co a Notice of Violation for its unlawful drilling.  The Notice of Violation advised Ree-Co that New Mexico no longer requires "discovery work" – such as sinking a shaft, digging a tunnel or drilling a hole – in order to locate a mining claim.  It further advised Ree-Co that "exploration drilling in New Mexico requires an approved permit from [the Department] pursuant to Section 19.10.4.401A of the New Mexico Mining Act Rules."  In March 2009, the parties held an informal settlement conference with regard to the Notice of Violation, and on May 22nd settled the issue.  The Notice of Violation was not challenged on appeal to the Mining Commission.

In May 2009, Ree-Co submitted to the Department an application for a General Permit to conduct discovery activities on the located mining claims.  As part of the permitting process, Ree-Co had to submit a Notice of Intent to conduct drilling activities to the BLM, which it duly submitted.  In July 2009, BLM informed Ree-Co that its Notice of Intent was complete.  In August 2009, the Department issued a General Permit to Ree-Co.  That General Permit, however, specified certain conditions and limitations on Ree-Co's drilling activity.  It allowed Ree-Co to conduct shallow drilling activity (i.e. holes no greater than 2 inches in diameter and no deeper than 50 feet), but declined to authorize the twenty 1200-foot-deep holes that Ree-Co proposed to drill.  Such deep drilling, the Permit stated, "will require either a minimal impact

exploration permit or a regular exploration permit, pursuant to 19.10.3.302 NMAC and 19.10.4.402 NMAC, respectively."

Ree-Co did not apply for an exploration permit.  Instead, it sought review at both the state and federal level.  At the state level, Ree-Co filed a written petition to the New Mexico Mining Commission ("Commission") for review.  In its petition, Ree-Co made two arguments. First, it argued that the conditions attached to the General Permit violated various New Mexico regulations.  Alternatively, Ree-Co argued that federal mining law preempts the New Mexico regulations.  As part of the Commission's administrative review, Ree-Co received a five-day hearing which included the testimony and cross-examination of multiple witnesses.  Hearings before the Commission are governed by the Rules of Civil Procedure for the New Mexico District Courts and may include subpoenas, production of documents and personal testimony. The parties also submitted legal briefs, proposed findings of fact and conclusions of law, and written closing arguments.  On March 15, 2010, the Commission issued its final decision in which it rejected both of Ree-Co's arguments.  *See* Notice of Filing of Mining Commission Decision (Doc. 43).  The Commission found, *inter alia*, that the State's mining rules did not pose an obstacle to the accomplishment of Plaintiffs' proposed deep drilling program and did not conflict with federal mining law. Doc. 52-2, ¶¶ 59, 64.  The Commission concluded that, while Plaintiffs' proposed deep drilling activity using an air-hammer drill rig came within the definition of "exploration" for which a general permit was not sufficient, Plaintiffs had available to them other types of exploration activities which caused little or no surface disturbance.  Doc. 52-2, ¶ 28.

The Commission also stated that the General Permit did not "contemplate or provide the appropriate standards or review for the level of activity proposed by Ree-Co's deep drilling

program." For example, the Commission noted that the General Permit did not provide standards for the proper plugging and abandonment of deep drill holes, Doc. 52-2, ¶¶ 47-48, and described the financial risk the State would have to incur when a miner did not properly complete the reclamation process.  The Commission pointed out that in the past, Ree-Co (through its agent at the time) had represented to the Department that it had properly plugged the drill holes it created, when in fact the holes had a surface cap only – making it appear that they had been plugged when in fact they were not.  ¶¶ 50-53.

In addition to seeking review of the Department's decision regarding its application for a General permit, Ree-Co also sought review at both the state and federal level.  Ree-Co has continued with the administrative proceedings and has appealed the New Mexico Commission's decision to the First Judicial District Court. See, NMSA 1978 §69-36- 16(C) ("A person who is or may be affected by a final action of the commission other than a rule may appeal the action of the commission by filing a notice of appeal with the district court pursuant to the provisions of Section 39-3-1.1 NMSA 1978.").  Doc. 52, Ex. A.  In the federal lawsuit, which has spawned the instant motions, Plaintiffs argue that New Mexico's permitting regulations are preempted by federal mining law.

The Court has already ruled on some of the issues raised in this case.  On March 11, 2010, the Court issued a Memorandum Opinion and Order granting Defendants' Judgment on the Pleadings (Doc. 42), in which the Court found that Plaintiffs failed to state a claim under Count II of the complaint.  Also in that Order, the Court dismissed the State of New Mexico Mining Commission as well as the Department from the lawsuit on the basis of Eleventh Amendment immunity.  On April 29, 2010, the Court denied Defendants' Motion to Dismiss Based on the Principles of *Younger* Abstention (Doc. 48), finding that the requested abstention

was inappropriate because there was no ongoing state administrative proceeding.

On May 11, 2010, the Court denied Plaintiffs' Motion for Preliminary Injunction (Doc. 49), finding that Plaintiff failed to show a likelihood of success on the merits of their preemption claim.[2]

## Discussion

Defendants contend that the case must be dismissed under the *Younger* doctrine. Plaintiffs maintain that the case does not satisfy all the elements of *Younger*, and further, contends that New Mexico's mining regulations and requirements are preempted by the 1872 Mining Law. Thus, what is left in this lawsuit is the question of whether the *Younger* doctrine applies to the federal case. If it does, this action would be dismissed with prejudice. *See Mission Oaks Mobile Home Park v. City of Hollister*, 989 F.2d 359, 362 (9th Cir.1993) (holding that federal claims dismissed pursuant to Younger could not be reserved for federal adjudication); *Smith v. Zlaket*, unpubl. opin., 1998 WL 898084 at *1 (Table) (9th Cir. 1998); *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697 (U.S. 1973) (*Younger* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts). If the Court decides that *Younger* does not apply, then the Court must decide the whether the federal 1872 Mining Law preempts New Mexico mining regulations.[3]

---

[2]  Specifically, the Court found that "Plaintiffs have not shown that they are likely to succeed on the merits of their preemption claim. Instead of explaining *why* federal mining law preempts New Mexico's mining laws, Plaintiffs merely assert in a conclusory fashion that it does so." Doc. 49 at 4.

[3]  The 1872 Mining Law provides a mechanism for resolving disputes over claim ownership or satisfaction of the patent requirements. *High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1184 (10th Cir. 2006). The legislative history of the law demonstrates a "desire

At oral argument, Plaintiffs' counsel argued that state administrative law does not give a miner an option to perform discovery of a mineral that does not conflict with the purpose of the 1872 Mining Law.  As Ree-Co's counsel explained at the hearing, when the Department advised Ree-Co that it would have to obtain either a minimal impact exploration permit or a regular exploration permit, Ree-Co objected to being placed in a category where it had to provide the Department with further information regarding the proposed drilling and how it would impact the land.  Plaintiffs' position is that the state administrative process is slow and risky.  A competitor might find a way to get through the process before Plaintiffs did, and beat Plaintiffs to the discovery of federal minerals on land which Plaintiffs had staked out.[4]  They view the state regulatory requirements as getting in the way of ability to discover and thus purchase the federal minerals on the land they have a right to explore.  Plaintiffs also argued that *Younger* does not apply to this case and that the Court may hear the preemption issue.

Defendants contend that the Court must dismiss this case under *Younger* and as a result, leave the preemption issue to the state courts to resolve.  For reasons given below, I find that the *Younger* doctrine does apply to this case, and thus I need not address the preemption issue.

---

to establish secure and permanent title to the land in the miners.  *Id*. (citing Cong. Globe, 38th Cong., 2d Session, at 684-687 (1865)).  Congressional intent was not for the "unfettered development of public land, but security of title as a "prerequisite to miners being willing to invest the necessary time and capital to develop the industry.  *Id*. at 1183.  Congress was also concerned about "ensuring the settled expectations of the emerging mining corporations." *Id*., at 1185-86.

[4]  At oral argument, Plaintiffs' counsel contended that the BLM's approval of a Notice of Intent would have been sufficient under federal law to do the kind of drilling Ree-Co wanted to conduct.  The Court cannot help but note that while Plaintiffs object to the state process being slow, Ree-Co probably would have been able to obtain the required additional permits within the year and a half between the time the Department issued to Ree-Co the General Permit with restrictions (August 2009), and the present.

I.        **Motion to Dismiss Based on Principles of *Younger* Abstention**

In *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, the Supreme Court held that federal courts should not interfere with pending state judicial proceedings absent extraordinary circumstances.  *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  That policy applies to civil cases as well as criminal cases.  *Id.* at 432.  "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state court proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court."  *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999).  A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.  *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999).  The doctrine of *Younger* abstention is a mandatory one—the case *must* be dismissed once all three conditions are met.  *Id.*

When Defendants filed the earlier motion to dismiss based on abstention, the state administrative proceeding was still ongoing because the Commission had not yet issued its decision in the administrative appeal.  However, by the time the Court reviewed that motion, the Commission had reached their final decision denying Plaintiffs' claims and the state proceeding was no longer ongoing.  Thus, the Court denied Defendants' motion to dismiss based on abstention (Doc. 48).  *See, e.g.*, *Walnut Props., Inc. v. City of Whittier*, 861 F.2d 1102, 1106-7 (9th Cir. 1988) (holding that state proceedings were not ongoing when state court case had been

stayed); *Tran v. Concannon*, No. 99-227, 2000 WL 761975 (D. Me. Jan. 6, 2000) (holding that administrative proceedings were not ongoing when claimant withdrew her request for administrative review).

Defendants renew their motion to dismiss on *Younger* grounds arguing that the appeal taken by Ree-Co to the state district court means that the case is still ongoing, and that all three *Younger* prongs are satisfied.

A.     First *Younger* Prong

The initial prong of the *Younger* inquiry has two sub-parts.  The Court must determine whether there is an ongoing state proceeding, and also must decide whether that proceeding is the type of state proceeding that is due the deference accorded by *Younger* abstention.  *See Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 (10th Cir. 2009).  Plaintiffs offer no challenge to Defendants' contention as to the first sub-part, and the Court finds that indeed there is an ongoing state proceeding by virtue of Plaintiffs' state court appeal of the matter.  *See Martinez v. Martinez*, No. 09-0281, 2010 WL 1608884, 1 (D.N.M. Mar. 30, 2010) ("[A] state proceeding is 'pending' or 'ongoing' [for the purposes of the *Younger* abstention] so long as the party has yet to exhaust state appellate remedies or the judgment has not yet been imposed."); *Danner v. Bd. of Prof'l Resp. of the Tenn. Supreme Court*, 277 F. App'x 575, 579 (6th Cir. 2008) ("The action remains pending until a litigant has exhausted his state appellate remedies." (internal quotation marks omitted)); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) ("[A] necessary concomitant of *Younger* is a party must exhaust his state appellate remedies before seeking relief in the District Court.");  *see also New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368-69 & n.4 (1989) (assuming without deciding that exhaustion of appellate remedies also applies to administrative proceedings).

9

A determination whether the administrative proceeding is the type of proceeding that merits *Younger* abstention involves an inquiry into whether the state proceeding is remedial or coercive – only the latter of which is entitled to younger deference.  This inquiry has evolved primarily from two United States Supreme Court cases, *Patsy v. Florida Board of Regents*, 457 U.S. 496 (1982), and *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc*., 477 U.S. 619 (1986).  In *Patsy*, the Supreme Court held that a federal discrimination claim could proceed without exhaustion or deference to the state proceeding.  In *Dayton Christian Schools*, the Supreme Court clarified some of the occasions when *Younger* deference was appropriate and also clarified its prior holding in *Patsy*, noting that the Patsy administrative proceedings were remedial rather than coercive.

In *Brown*, the Tenth Circuit acknowledged that this circuit had not yet delineated a test "for determining whether a state proceeding is remedial or coercive,"555 F.3d at 889, and turned to guidance from other circuits in fashioning an inquiry to determining whether a state court proceeding is entitled to *Younger* deference[5]:

> . . . the most compelling test-one crafted by the First Circuit-asks the court to consider two issues in deciding whether *Dayton Christian Schools* or *Patsy* controls. First, we must query whether the federal plaintiff initiated the state proceeding of her own volition to right a wrong inflicted by the state (a remedial proceeding) or whether the state initiated the proceeding against her, making her participation mandatory (a coercive proceeding). Second, we must differentiate cases where the federal plaintiff contends that the state proceeding is unlawful (coercive) from cases where the federal plaintiff seeks a remedy for some other state-inflicted wrong (remedial). Even this test is not entirely determinative; below, we also discuss other factors that may distinguish remedial proceedings from coercive ones.

---

[5]  *Brown* relied on decisions from the First, Third and Fourth Circuits, and particularly from the First Circuit in *Kercado-Melendez v. Aponte-Roque*, 829 F.2d 255 (1st Cir. 1987).  555 F.3d at 891-92.

*Brown*, 555 F.3d at 889.   The court further noted that this test was not "entirely determinative" and that other factors could also be used to distinguish remedial proceedings from coercive ones. *Id*.

The plaintiff in *Brown* was a developmentally disabled adult who resided at private, not-for-profit residential care facility.  Medicaid payments bridged the gap between plaintiff's income and the cost of her care facility.  Plaintiff initiated the state administrative proceeding after her Medicaid benefits were summarily terminated following the state's determination that she was no longer  "medically needy" as a result of an amendment to Kansas trust law which deemed that certain trust resources were available to her.  The majority found that the state proceeding was not the type of proceeding entitled to *Younger* deference because the state did not compel her to participate in the proceedings and because plaintiff's efforts were directed to securing relief from the state's allegedly unlawful conduct by recovering her Medicaid benefits. The Tenth Circuit concluded that the district court erred in dismissing the case.[6]

Plaintiffs insist that the nature of the ongoing state court proceeding is remedial rather than coercive, pointing to the Supreme Court's *Younger* analysis in  *New Orleans Public Service, Inc. v. Council of New Orleans* (*New Orleans*), 491 U.S. 350 (1989).  That case involved a state court review of a city council's denial of an immediate rate adjustment requested by a nuclear power plant.  *New Orleans* concluded that *Younger* abstention applied to proceedings which are "judicial in nature," but that *Younger* did not require abstention in deference to state judicial proceedings "reviewing legislative or executive action."  *Id*. at 370; *see also Dayton*, 477 U.S. at

---

[6]  However, Judge Tymkovich dissented, concluding  instead that the state proceedings were coercive because they were aimed at enforcing state Medicaid laws against Brown. *Brown*, 555 F.3d at 889.

627 (concerns of comity are applicable to state administrative proceedings).

The Court agrees with Plaintiff that the principles in *New Orleans* are applicable here. However, those principles as applied to the facts in this militate to a finding that the ongoing state court proceeding in this case is coercive rather than remedial.  The issue being reviewed in *New Orleans* – a denial of a utility rate increase – involved rate-making, which is essentially a legislative act, and the Supreme Court's holding in that case turned largely on that finding. 491 U.S. at 351 (holding that the proceedings at issue were not judicial in nature, since ratemaking, which establishes a rule for the future, is essentially a legislative act).

The ongoing state proceeding is now in the form of an appeal to state court, and thus the administrative process at issue here can fairly be described as judicial in nature.  The process is set up under state statute, NMSA § 69-36-15, to review the Commission's decisions to grant or deny a mining permit under New Mexico's mining laws, and provides an elaborate judicial review scheme, including taking evidence, § 69-36-15(C); subpoenaing witnesses and documents, § 69-36-15(D); and utilizing the Rules of Civil Procedure for the District Courts, § 69-36-15(F).  Further, New Mexico's administrative regulations dealing with review of the Commission's decisions are compatible with the judicial review process.[7]  Thus, Ree-Co's situation can be distinguished from the one in *New Orleans* because here Ree-Co is challenging the decision following a judicial review of a decision made pursuant to the State's mining laws and regulations.

---

[7] These regulations include conducting evidentiary hearings, NMAC, § 19.10.14.108; issuance of pre-trial orders, NMAC § 19-10-14.1409(F); ruling on motions and procedural requests, NMAC § 19.10.14.109(B); conducting discovery, NMAC § 19.10.14.1422; hearing testimony and ruling on evidence, NMAC §§ 19.10.14.1430, 19.10.14.1432, 19.10.14.1433; and issuing a final order, NMAC § 19.10.14.1441.

At oral argument, Plaintiff's counsel emphasized primarily that the *Younger* doctrine does not apply because there is no coercive state action.  Plaintiffs contend that while there may have been state coercive action with regard to the issuance of the Notice of Violation, it ended with the parties' resolution upon settlement in May 2009. Any subsequent state proceedings, including those related to Ree-Co's application for a General Permit, were remedial rather than coercive.  While Ree-Co was prohibited from proceeding as it initially planned, Ree-Co's application for a General Permit was a relatively simple one to obtain upon a showing of certain qualifications such as acreage restrictions and depth restrictions for drilling.

This argument ignores the nature of the Department's decision requiring Ree-Co to obtain either a minimal impact exploration permit or a regular exploration permit before it could proceed with deep drilling activities.  In issuing Ree-Co the Notice of Violation in February 2009 and in subsequently rejecting Ree-Co's planned deep drilling activities during the General Permit application process, the Department was enforcing the State's mining laws and regulations. While Ree-Co did initiate the challenge in filing for review of the restrictions imposed by the General Permit, it did so only as a response to the permit's imposition of restrictions placed on its drilling activities. In other words, the coercive nature of the state proceeding did not end with the settlement regarding the Notice of Violation, but continued into the General Permit application process because Ree-Co's participation in those proceedings was necessary in order to proceed further with its business of locating and discovery.  Under the inquiry set out in *Brown*, these characteristics are more indicative of a state proceeding which is coercive in nature, rather than remedial.  555 F.3d at 891.

The facts of this case offer a basis to consider yet another factor mentioned in *Brown* in order to determine whether the ongoing state proceeding is coercive:

13

> A third factor emerges from a review of the proceedings at issue in the cases where our sister circuits have held that state administrative and judicial proceedings are ongoing proceedings entitled to *Younger* deference. In these cases, the federal plaintiff sought to thwart a state administrative proceeding initiated to punish the federal plaintiff for a bad act. Thus, a common thread appears to be that if the federal plaintiff has committed an alleged bad act, then the state proceeding initiated to punish the plaintiff is coercive.

*Brown*, 555 F.3d at 891. The New Mexico Legislature created a specific statute regarding penalty assessments and permits:

> Any order, **penalty assessment** or issuance or **denial of a permit** by the director pursuant to the New Mexico Mining Act shall become final unless a person who is or may be adversely affected by the order, penalty assessment or issuance or denial of a permit files, within sixty days from the date of notice or the order, penalty assessment or issuance or denial of a permit, a written petition to the commission for review of the order, penalty assessment or issuance or denial of a permit by the director.

NMSA 1978, § 69-36- 5(A) (emphasis added).  It is under this section, which lumps "penalty assessments" and "denials of a permit" together, that Ree-Co filed its Notice of Appeal to initiate an administrative process which was specifically provided for such challenges.  *See Pueblo of Picuris v. N.M. Energy, Minerals & Natural Res.*, 133 N.M. 166, 170 (Ct. App. 2001) ("We presume that the legislature had a purpose when it addressed permits and penalty assessments in a separate section of the Mining Act, and when it provided for a special procedure for their challenge and appeal.").  It is not so difficult to perceive a punitive element within the facts of this case, starting with the Department issuing to Ree-Co a Notice of Violation of unlawful drilling, and subsequently a General Permit which restricted Plaintiffs' drilling activities.  Plaintiffs' efforts are directed at reversing those adverse actions.  Thus, based on the express language of the relevant statutes, it is clear that New Mexico law considers a denial of a permit to be analogous to a penalty assessment.

Accordingly, I find that the first *Younger* prong is satisfied on both its sub-parts.

14

B.     Second *Younger* Prong

The second *Younger* requirement is that an important state interest be served.  Plaintiff argues that the preemption issue is best addressed in federal court.  However, in a *Younger* analysis, "important state interest" is defined much broader than Plaintiff allows.  The focus is not on the State's interest "in the outcome of the particular case," but rather "the importance of the generic proceedings to the State."  *New Orleans*, 491 U.S. at 365 (quoting *Younger*, 401 U.S. at 51-52). In *Younger,* the court found that the "important state interest" of the State of California was "carrying out the important and necessary task" of enforcing its criminal laws, and not the state's interest in preventing persons from distributing handbills.  Following the same vein of inquiry, in this case the "important state interest" is not whether Ree-Co ultimately obtains a permit which allows Plaintiff to dig twenty 1200-foot-deep holes which Plaintiff had proposed to drill.  Rather, the "important state interest" is applying and enforcing the restrictions associated with its mining regulations and laws in order to promote "responsible utilization and reclamation of lands affected by exploration, mining or the extraction of minerals that are vital to the welfare of New Mexico." NMSA 1978 § 69-36-2.

The state interests involved here are no small matter.  New Mexico has developed a system for the granting and denial of mining permits.  This system ensures the viability and conservation of one of the state's natural resources.  *See, e.g.*, *Burford v. Sun Oil Co.*, 319 U.S. 315, 320 (1943) (noting that Texas' interests in gas and oil are tied to the conservation of those resources as well as the economy of the state).

C.     Third *Younger* Prong

The last of the *Younger* prongs to be considered is whether the state court provided an adequate forum to present the federal claims being raised in the federal complaint.

15

Federal courts will not interfere with ongoing state proceedings so long as those proceedings provide the attorney with the opportunity to raise constitutional challenges. *Amanatullah v. State Bd. of Med. Exam'rs*, 187 F.3d 1160, 1164 (10th Cir. 1999).  There is no reason why Plaintiffs' preemption claim could not be addressed in the state proceeding – indeed, it was.  *Id*. ("It is sufficient for purposes of *Younger* abstention that federal challenges . . . may be raised in state court judicial review of administrative proceedings.").  Plaintiffs continue to argue exactly the same issue – that the Mining Act of 1782 preempts New Mexico mining law – in their appeal to the state court.

The review and appeal process does not allow Plaintiffs to present new witnesses, but the adverse decision of the Director of the Department was subject to evidentiary scrutiny.  *See Old Abe Co. v. N.M. Mining Comm'n*, 121 N.M. 83, 94 (Ct. App. 1995) (Director is not vested with "unguided" or "uncontrolled" discretion).  Further, on the purely legal issue being raised, the state court of appeals can still come to a different conclusion on the preemption issue in that it may reverse the decision of the Commission.

Accordingly, all three *Younger* prongs have been satisfied, and this Court must abstain from proceeding in this action.

## II.    Motion to Dismiss Based on Court's Previous Ruling Regarding Injunctive Relief

In light of my findings on Defendants' motion to dismiss based on the *Younger* principle, the Court need not consider Defendants' other motion to dismiss, which is directed toward a dismissal on the merits.  Thus, that motion is denied as moot.

## Conclusion

Case law precedent holds that federal courts should not interfere with pending state judicial proceedings absent extraordinary circumstances.  Ree-Co continues to pursue its claims

in state court, contending that the Department's decision "adversely" affected its proposed drilling operations and that prohibiting such drilling conflicts with the Mining Act of 1872. The State of New Mexico has a compelling interest in protecting and regulating its environment, including issuance of appropriate permits. Moreover, Plaintiff has an adequate forum in the ongoing state proceedings in which to raise the matters which are raised in this federal case.

In sum, I find and conclude that all three prongs of the *Younger* doctrine are met, and that the Court should not exercise its jurisdiction as this matter continues in litigation at the state level. The doctrine of *Younger* abstention is a mandatory one, and thus this case must and shall be dismissed on that basis.

**IT IS ORDERED** that Defendants' Motion to Dismiss Based on the Principles of Younger Abstention **(Doc. 51)** is hereby GRANTED for reasons described above;

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss **(Doc. 53)** is hereby DENIED AS MOOT for reasons described in this Memorandum Opinion and Order.

A Judgment will be entered contemporaneously with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE